FILED'08 JUL 22 11:26USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

JOSHUA J. STOKES,

        Defendant.

No. CR 07-60019-AA

OPINION AND ORDER

_____

Frank Papagni
Assistant United States Attorney
405 E. Eighth Ave., Suite 2400
Eugene, OR 97401
    Attorney for plaintiff

Marc Spence
Spence & Sabitt, LLP
747 Willamette St.
Eugene, OR 97401
    Attorney for defendant

AIKEN, Judge:

    Defendant is charged with three counts of felon in possession

of a firearm in violation of 18 U.S.C. § 922(g)(1).  Defendant

moves to suppress evidence seized from two vehicles driven by

1   - OPINION AND ORDER

defendant on July 1, 2006 and August 16, 2006.  Defendant argues that law enforcement officers unlawfully searched both vehicles in violation of his rights under the Fourth Amendment.  The motion is denied.

<u>BACKGROUND</u>

On July 1, 2006, the North Bend Police Department received a teletype that stated:

> An anonymous RP [reporting person] called and advised
> that Josh Stokes & Chelsea Wolgast are wanted for
> stealing a rental car out of Eugene and that they are
> currently driving a silver Dodge Stratus rental car . .
> . . RP also told OSP that they have a gun and may be
> attempting to get Wolgast's son from whomever has him at
> this time.  Both Stokes and Wolgast are suspended.
> Stokes is a convicted felon.  It is unknown if any of
> this info is good info.  They are not wanted or on
> probation.  Posted for officer info only at this time.

Later that day, North Bend Police Officer Downing was on patrol when he recognized defendant driving a small silver car.  A police dispatcher confirmed that defendant and his passenger, Chelsea Wolgast, had suspended licenses.  Officer Downing turned his patrol car around with the intent to stop defendant.  However, before Officer Downing could effectuate a traffic stop, defendant parked his car near a shopping mall and exited the vehicle, leaving Wolgast in the car.

Officer Downing contacted Wolgast and asked where defendant was going.  Wolgast stared blankly and did not answer.  Officer Downing then asked Wolgast if there was a gun in the car.  Wolgast answered "yes" and told Officer Downing that it was in the front

2    - OPINION AND ORDER

dash compartment.  Officer Downing ordered Wolgast out of the car and placed her in custody.  Police Officers Griggs and Young and Coos County Deputy Slatter arrived to assist.

Officer Downing opened the dash compartment door and retrieved a loaded .40 caliber pistol.

Wolgast was advised of her <u>Miranda</u> rights.  She then told the officers that she had bought the .40 caliber firearm for protection and consented to a search of her purse.  Inside her purse, officers found a loaded .25 caliber pistol.  Wolgast again stated that the firearm belonged to her and that she bought it for protection. Wolgast stated that she had purchased the .40 caliber firearm with defendant at a gun shop.  Defendant helped choose the firearm, and after it was purchased, Wolgast saw defendant rip the serial number from the receipt or box and put it in his wallet.

Defendant was arrested by Officer Griggs as he walked through a store in the shopping mall.  Defendant was taken to Officer Grigg's patrol car and seated in the backseat.

Officer Downing contacted defendant and advised him of his <u>Miranda</u> rights.  Defendant admitted driving the car but denied knowledge of the guns.  Incident to defendant's arrest, Officer Griggs searched defendant and found a piece of paper in his wallet with identifying information regarding the .40 caliber pistol.

Defendant was cited for driving while suspended, driving while uninsured and charged with two felony counts of being a felon in

3    - OPINION AND ORDER

possession of a firearm and two counts of unlawful possession of a firearm.  The car, rented from Enterprise, was impounded pursuant to North Bend Police Department policy.

On August 16, 2006, defendant was driving a sports utility vehicle, also rented from Enterprise.  North Bend Police Officer Gaither clocked defendant going 49 mph in a 35 mph zone.  As Officer Gaither paced the vehicle, the speed increased to 50-52 mph.

Officer Gaither stopped the vehicle and contacted defendant. Defendant identified himself and admitted that he did not have a license.  Chelsea Wolgast sat in the front passenger seat and Vernon Johnson was sitting in the back.  Defendant provided rental documents, but they were not for the vehicle he was driving.  A police dispatcher confirmed that defendant's license remained suspended.  Officer Downing notified Officer Gaither about defendant's arrest on July 1 and responded to the scene.

Officer Gaither cited defendant for driving while suspended and speeding and informed defendant that the vehicle would be impounded.  Defendant told Officer Gaither that a friend had loaned him the vehicle, and that his friend was nearby and could retrieve it.  Officer Gaither explained that it was police policy to impound a vehicle driven by a suspended driver.

Defendant denied that there were illegal drugs or firearms in the vehicle.  The officers informed defendant and his passengers

that they were free to leave, but they remained at the scene. Defendant used his cellular phone, and Daniel Basinger arrived at the scene. Basinger approached Officer Gaither, identified himself as the person who rented the vehicle, and asked if he could take the vehicle. Officers Gaither and Downing questioned Basinger, defendant, Wolgast and Johnson about defendant's use of the vehicle and whether Basinger had given him permission to drive it. The officers found Basinger's statements inconsistent and refused to release the vehicle to him.

Officer Downing conducted an inventory search of the vehicle. He found a 9mm pistol in the center console along with ammunition and a methamphetamine pipe. Defendant was arrested and Wolgast detained; Johnson had left the scene. Basinger told Officer Downing that the pistol belonged to him. Officer Downing also found an unloaded Colt .223 semi-automatic rifle in the rear cargo area on top of several duffle bags, along with marijuana, scales, and a substance that appeared to be methamphetamine.

DISCUSSION

A.  July 1, 2006 Search

Defendant argues that Officer Downing lacked probable cause to search the rental car driven by him on July 1, 2006. Defendant maintains that the uncorroborated tip from an anonymous source did not provide probable cause to search the vehicle for firearms, that the stop and questioning of Wolgast was unlawful, and that the

search of the vehicle cannot be justified as a search incident to arrest. None of these arguments are persuasive.

First, defendant was not "stopped" while driving the vehicle, though Officer Downing had probable cause to effectuate a traffic stop based on his knowledge that defendant was driving with a suspended license. See Whren v. United States, 517 U.S. 806 (1996). Instead, defendant parked and exited the vehicle before he was contacted by Officer Downing.

Second, I do not find that Officer Downing's initial contact with Wolgast constitutes a detention. Defendant had already stopped the car, and Wolgast remained sitting in the vehicle when Officer Downing approached.

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means.

United States v. Drayton, 536 U.S. 194, 200-01 (2002) (internal citations omitted); see also Muehler v. Mena, 544 U.S. 93, 100-01 (2005) (mere police questioning does not constitute a seizure unless it prolongs the detention).[1] Thus, Officer Downing's

---

[1]Regardless, defendant lacks standing to challenge the circumstances of Wolgast's initial encounter with Officer Downing. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); United States v. Pulliam, 405 F.3d 782, 786 (9th Cir. 2005) ("[A] person seeking to exclude evidence allegedly obtained in violation of

contact with and brief questioning of Wolgast did not render the encounter a seizure, and Wolgasts's statement about the firearm was not induced by coercive conduct.

Third, under the automobile exception, law enforcement officers may search a vehicle without obtaining a warrant if probable cause exists to believe contraband will be found in the vehicle. California v. Acevedo, 500 U.S. 565, 580 (1991). After Officer Downing approached Wolgast and asked if there was a firearm in the vehicle, Wolgast stated "yes." Thus, Officer Downing had probable cause to search the vehicle for evidence of firearms. Id.; Illinois v. Gates, 462 U.S. 213, 238 (1983).

Finally, the government does not justify the search of the vehicle as incident to defendant's arrest. Regardless, after officers found a firearm in the vehicle defendant was driving and confirmed that he had been convicted of a felony, probable cause existed to arrest him, and the search of his person was lawful as a search incident to arrest. See United States v. Dorsey, 418 F.3d 1038, 1043-44 (9th Cir. 2005).

B.  August 16, 2006 Search

Defendant contends that the search of the rental vehicle on August 16, 2006 was not a lawful inventory search, because officers had an investigatory motive to search the vehicle, thus rendering

_____

the fourth amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence").

the search pretextual.

Once a vehicle is impounded, law enforcement officers may conduct an inventory search pursuant to state law and standardized local procedures. Florida v. Wells, 495 U.S. at 1, 4 (1990); South Dakota v. Opperman, 428 U.S. 364, 269 (1975); United States v. Wanless, 882 F.2d 1459, 1464 (9th Cir. 1989).

The North Bend Police Department authorizes an officer to impound and tow a vehicle in accordance with state law. Govt. Ex. 3, p. 1. Under Oregon law, "A police officer who has probable cause to believe that a person, at or just prior to the time the police officer stops the person, has committed an offense described in this subsection may, without prior notice, order the vehicle impounded . . . ." Or. Rev. Stat. § 809.720(1). Included as a qualifying offense under § 809.720(1)(d) is driving while suspended. Id. § 809.720(1)(a).

A city ordinance establishes procedures for conducting an inventory of personal property in an impounded vehicle. In particular, the ordinance provides that "the contents of all vehicles impounded by a police officer will be inventoried," including items found in the engine compartments of the vehicle, under or within the dashboard, in door pockets, in consoles between the seats, under the floor mats and seats, and in locked or unlocked compartments such as the trunk. Govt. Ex. 3, pp. 9-10.

Accordingly, based on police department policy, state law, and

8    - OPINION AND ORDER

local ordinance, Officers Gaither and Downing had authority to impound and conduct an inventory search of the vehicle after defendant was cited for driving while suspended. Defendant does not dispute that the officers complied with those procedures.

Nevertheless, defendant argues that the search was mere subterfuge for an investigatory search, because the officers believed that defendant had been in possession of a firearm several weeks prior. Defendant also cites the officers' refusal to release the vehicle to Basinger, even though he claimed to be the person who rented the vehicle.

However, "the presence of an investigatory motive does not invalidate the inventory search." United States v. Bowhay, 992 F.2d 229, 231 (9th Cir. 1993). "When the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation." Id. Likewise, the fact that an officer exercises discretion in determining whether to impound or release a vehicle does not render a subsequent inventory search unlawful, provided the search is conducted according to standardized police procedures and the officer is not acting in bad faith or solely for the purpose of investigation. Colorado v. Bertine, 479 U.S. 367, 375-76 (1987).

Here, no evidence suggests that Officers Downing and Gaither conducted the inventory search in bad faith or solely with an

investigatory motive.    Officer Downing conducted a similar inventory search after defendant was cited and arrested on July 1, 2006, and it is undisputed that no person in the vehicle on August 16, 2006 was authorized to drive it.   Moreover, Basinger presented no evidence that he was responsible for or authorized to drive the rental vehicle.    Thus, I find that the vehicle was lawfully impounded and searched.

## CONCLUSION

Defendant's Motions to Suppress Evidence (docs. 31, 37) are DENIED.

IT IS SO ORDERED.

Dated this ___*21*___ day of July, 2008.


_____
                    Ann Aiken
         United States District Judge

10    - OPINION AND ORDER